IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDSCRIPT PHARMACY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 5663 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| D&D PHARMA LTC, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| D&D PHARMA LTC, LLC, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDSCRIPT PHARMACY, LLC, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Medscript Pharmacy, LLC has brought a five count complaint against defendant D&D Pharma, LTC, LLC, asserting claims for federal trademark infringement under 15 U.S.C. §§ 1114-1117; federal unfair competition and false designation of origin under 15 U.S.C. § 1125(A); common law trademark infringement; common law unfair competition; and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq. Defendant answered the complaint, raising a "prior use" affirmative defense and has counterclaimed seeking a declaration that it has priority use of the Medscript mark, and that plaintiff's registrations should be cancelled. The parties have filed cross-motions for summary judgment. For the reasons that follow, plaintiff's motion for summary judgment is denied,

defendant's motion for summary judgment is granted and plaintiff's registration of marks No. 4,592,559 and 4,592560 are ordered cancelled.

**BACKGROUND**[1]

Plaintiff is an independent pharmacy located in Orland Park, Illinois, specializing in compounding and patient counselling. Plaintiff began offering compounding pharmacy service in 2013, and now offers both compounding and retail pharmacy services. On January 17, 2014, plaintiff submitted to the United States Patent Trademark Office ("USPTO") applications for a character mark consisting of the name MedScript Pharmacy and a service mark for the stylized logo:



The USPTO issued registrations for both marks on August 26, 2014.

Plaintiff is owned by Maryam Alrazzaq. She purchased the company on December 31, 2013, from its former owners who had hired Ms. Alrazzaq to run the Orland Park location. The former owners, all pharmacists, chose the name Medscript. Ms. Alrazzaq had no input into the name and has no knowledge of how the name was chosen or whether any search for prior use was done before the name was chosen. Plaintiff has been using the name Medscript since its inception and the marks since they were registered.

---

[1] The background facts are taken from the parties' briefs and L.R. 56.1 statements and responses. Plaintiff has moved to strike defendant's responses. The court notes that neither party's Rule 56.1 submissions are totally compliant with the letter or spirit of the local rule. The following factual background is based on the court's review of the submissions that it considers proper and admissible.

Defendant is a Delaware company with its principal place of business in Noblesville, Indiana. It is a wholly owned subsidiary of D&D Pharma, LLC, doing business as Medscript LTC, LLC. Its Chief Executive Officer ("CEO") is Grant Dino, Sr., who is also a 50% owner. D&D Pharma LLC owns several subsidiaries including D&D Pharma LTC, LLC d/b/a MedScript LTC Pharma, LLC, d/b/a Medscript Long Term Care Pharmacy; and Medscript Compounding LLC, with each offering different services. Defendant sells prescription drug services primarily marketed to assisted living facilities, traditional nursing facilities, skilled nursing facilities, adult daycare centers and group homes. It provides pharmacy services to 15 adult care facilities in Indiana, two facilities in Illinois, and two facilities in Kentucky, as well as, to a much lesser extent, the general public. It does not offer pharmacy benefits management ("PBM") and does not offer formal mail order pharmacy services, but does mail prescriptions to patients in the states in which it is registered. Defendant did not conduct any operations or provide any pharmacy services prior to October 4, 2016.

The name Medscript has been used in connection with pharmacy services as far back as 1972, when a company called Willard Schachtor Enterprises, Inc. opened a pharmacy in St. Ann, Missouri, called Medscript Service. In 1999, Medscript Service was purchased by Unity Health, a health system that operated several medical centers in Missouri, including St. Johns Mercy Healthcare. Unity Health dissolved in 2001, and St. Johns Mercy Healthcare continued operating the Medscript Pharmacy business, offering a number of pharmacy services, including filling retail and mail order prescriptions and providing compounding services. It also offered a PBM program. A PBM administers prescription drug programs for commercial health plans, self-insured employer plans business groups, and individuals. St. Johns Mercy Medscript

3

provided its own retail, online and mail order pharmacy services to fulfil the prescription drugs in its PBM. By 2008, Medscript was licensed in at least 35 states including Illinois, Indiana and Missouri.

In 2008, Leehar Distributors, Inc. ("LDI") purchased the "Medscript business" from the St. Johns Mercy Medscript entities. LDI was a pharmacy services company based in Creve Coeur, Missouri. Grant Dino, Sr. owned 50% of LDI, and his brother Leonard owned the other 50%. Grant was the Chief Operating Officer ("COO") and Leonard was the CEO. Around that time Grant registered the internet domain name <Medscriptrx.com>. Among the assets purchased from St. Johns Mercy Medscript was the domain names <Medscript.net> and <Medscript.org>. According to Grant Dino, Sr.'s declaration, after purchasing the Medscript assets and registering the domain names, LDI used the "Medscript" service mark and tradename in connection with a suite of integrated pharmacy-related services consistently in interstate commerce in at least June 2008 . . .." Plaintiff attempts to contest this statement by showing different versions of the mark on LDI's old webpages, but admits that LDI used the name Medscript at least in connection with its prescription drug plan.

Grant Dino, Sr. also declares that between June 2008 and November 2016 LDI continuously and consistently used the MedScript service mark in connection with pharmacy services including: (1) compounding; (2) mail order; (3) online; (4) retail; (5) PBM; and (6) a prescription drug plan. His declaration is supported by screen shots of the Medscriptrx.com webpage from 2012 and 2014 obtained from the internet archive "wayback machine." Once again, plaintiff attempts to contest Dino's statements showing versions of LDI's main webpage describing its services without referencing Medscript, but again admits that LDI used the name

4

Medscript in connection with its Medscript Prescription Drug Plan, and has no response to contest the exhibits showing LDI's use of Medscript in connection with its other services. Indeed, Dino's declaration and exhibits demonstrate that LDI continued to use the name Medscript Pharmacy until November 2016.

In early April 2016 the Dinos decided to sell LDI to a private equity group. Because Grant Dino wanted to expand into the long term care pharmacy and prescription market, he wanted to keep the Medscript mark and name. In anticipation of the sale of LDI, he had LDI assign the Medscript mark and its good will, as well as the web addresses, to himself. The assignments were executed on April 1, but he allowed LDI to continue to use the mark in connection with its services until the LDI sale closed in December 2016. Grant remained COO of LDI until the sale closed. During that time he and a business partner formed D&D Pharma LLC on October 4, 2016, which then formed several wholly owned subsidiaries including defendant.

After LDI was sold, in early December 2016, LDI employees were instructed to direct all Medscript customers calling LDI to D&D's new telephone number, email address, and office address. That direction was repeated in January 2017 by Leonard Dino, who stayed with LDI after the sale.

On December 30, 2016, Grant Dino assigned the Medscript service mark and trade name to D&D Pharma LLC, together with the good will associated with those marks. Since that time, D&D Pharma has licensed its wholly owned subsidiaries, including defendant, to use the Medscript service mark in advertising and promoting their respective pharmacy services. Since

opening Medscript Long Term Care in early 2017, defendant has continuously and consistently used the Medscript service mark in connection with its pharmacy services.

**<u>DISCUSSION</u>**

The parties have brought cross-motions for summary judgment on both plaintiff's claims as well as defendant's affirmative defenses and counterclaim. Summary judgment is appropriate when is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(s); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A moving party can prevail on summary judgment by either pointing to undisputed facts supported by the record that demonstrate that it is entitled to judgment, or it can point to an absence of evidence of an essential element of the responding party's claim or affirmative defense. Id. Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (1990). The court does not weigh conflicting evidence or make credibility determinations, but considers the evidence as a whole and draws all inferences in the light most favorable to the nonmoving party. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (186). The nonmoving party, must, however, do more than simply "show there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be some evidence on

which the jury could reasonably find for the [nonmoving] party." Anderson, 477 U.S. at 252; see Modrowski v. Pigatto, 712 F.3d 1166, 1167 (7th Cir. 2003) (The court must enter summary judgment against a party that "does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question.")).

Plaintiff has brought claims for infringement and unfair competition under the Lanham Act. To prevail on these claims, plaintiff must establish that it has protectable rights in the marks and a likelihood that the other parties' unlawful use of the mark causes confusion among consumers. See Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1115 (7th Cir. 1997).[2] In the instant case, the parties agree that there is both a likelihood and documented actual confusion among consumers. Thus, the only issue is whether plaintiff has a protectable right in its registered marks.

"Rights in a trademark are determined by the date of the mark's first use in commerce. A party who first uses a mark in commerce is said to have priority over other users." Hana Financial, Inc. v. Hana Bank, 574 U.S. 418, 135 S.Ct. 907, 908 (2015). In the instant case, there is no dispute that plaintiff both used and registered its mark prior to defendant opening its doors. Registration is significant, but not conclusive. It provides prima facie evidence of validity of the registered work, of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce or in connection with the goods and services specified in the certificate. B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S.

---

[2] The parties agree that plaintiff's claims brought under federal and state unfair competition laws "are subject to the same analysis and will rise and fall together . . .." Gimix, Inc. v. JS & A Group, Inc., 699 F.2d 901, 908 (7th Cir. 1983).

138, 142-43 (2015). Nonetheless, use prior to registration creates priority. Hana, 135 S.Ct. at 909.

Defendant's claim to priority is based on two assignments: first, the assignment from LDI to Grant Dino, and then the assignment from Grant Dino to D&D Pharma LLC. The Lanham Act provides for assignments of marks, provided that the related good will of the business in which the mark is used is also transferred. See 15 U.S.C. § 1060(a)(1). This is because a trademark is meaningless apart from the good will of the business with which it is associated. See Marshak v. Green, 746 F.2d at 927, 929 (2d Cir. 1984).

A valid assignment entitles the assignee to "step into the shoes" of the assignor and gain whatever priority the assignor might have had in the mark. Archer Daniels Midland Co. v. Narula, 2001 WL 804025, *5 (N.D. Ill. July 12, 2001). There is no dispute that LDI was using the mark prior to plaintiff. Thus, if the LDI assignments to grant Dino and then from Dino to defendant are valid, then defendant has priority over plaintiff.

Plaintiff argues that the assignment from LDI to Dino are invalid "assignments in gross" because they assign the marks without the accompanied good will of LDI's business. Money Store v. Harriscorp Fin., Inc., 689 F.2d 666, 676 (7th Cir. 1982). Good will is "the advantage obtained from use of a trademark, including public confidence in the quality of the product and in the warranties made on behalf of the product, and the public's name recognition of the product that differentiates it from others." Narula, 2001 WL 804025 at *5.

Plaintiff first argues that the LDI assignments to Grant Dino were naked, or without good will, because LDI continued to operate Medscript as a going concern for a few months after those assignments. Thus, plaintiff argues that the assignment was not in connection with the

sale or transfer of the underlying business. Dino testified, however, that he continued to allow LDI to use the mark until the sale was complete, specifically to allow continuity until he got the new companies running. And, the evidence is undisputed that after the sale LDI referred all Medscript customers to defendant, demonstrating that the intent was to transfer the use of the mark with the pharmacy services.

The court also rejects plaintiff's argument that LDI could not transfer the "good will" to Dino because in November 2016 it had sold all of its good will pursuant to the LDI purchase agreement. First, that agreement says nothing about transferring good will, and in any event, the sale did not close until December, after LDI had assigned the marks to Dino. Thus, it had nothing to "sell" to the third party purchaser. And, although certainly not dispositive, the court notes that all of the assignments in question explicitly recite that good will was assigned, at least indicating an intent to transfer the good will. See Money Store, 689 F.2d at 676.

Nor is there any merit to plaintiff's argument that the LDI assignments were " a straightforward attempt to put a placeholder on the name Medscript." "The fact that an assignment of a mark was motivated by the assignee's motivation to acquire a priority date earlier than a rival does not detract from the validity of the assignment." Narula, 2001 WL 804025 at *5.

As its last challenge to the LDI's assignments, plaintiff argues that defendant's use of the name Medscript is not substantially similar to LDI's use of the name. According to plaintiff, defendant uses the name in connection with a brick and mortar retail pharmacy in Indiana that sells pharmacy services to nursing homes and adult care facilities. LDI, on the other hand, at least according to plaintiff, used the name in connection with a prescription drug plan and

9

perhaps a related mail order pharmacy service. Even if this were true, and the evidence demonstrates that LDI's use of the name was far more extensive than that, the court concludes that defendant's use of is substantially similar to LDI's. LDI used the name in connection with filing both retail and compounding prescriptions. Defendant does the same. The fact that they offer similar services is also demonstrated by the admitted fact that after the sale LDI referred all Medscript calls to defendant. The two companies were both offering a variety of pharmacy services.

There has also been a continuity of management, as Grant Dino, Sr. was 50% owner and COO of LDI, and is currently 50% and CEO of defendant. He has thus managed both the use of the mark and its related business for at least eleven years.

Consequently, the court concludes that defendant is entitled to summary judgment on all of plaintiff's claims. Defendant's prior use of the mark also entitles it to summary judgment on its claim that plaintiff's registration should be cancelled. Prior use is a valid ground for cancellation. Blanchard Importing & Distributing Co. v. Charles Gilman & Son, Inc., 353 F.2d 400, 401 (1st Cir. 1965).

## CONCLUSION

For the reasons described above, plaintiff's motion for summary judgment [Doc. 57] is denied. Defendant's motion for summary judgment [Doc. 68] is granted. Plaintiff's marks Nos. 4592559, and 4592560 are ordered cancelled.

ENTER:     March 11, 2020

Robert W. Gettleman
United States District Judge